# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHORE POINT DISTRIBUTING COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 701 ,<br><br>*Defendant*. | Civil Action No.: 17-cv-01950 (PGS)<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the Court on a motion to vacate an arbitration award that was issued in favor of International Brotherhood of Teamsters Local 701 (Union) by Plaintiff, Shore Point Distribution Company (Shore Point) (ECF No. 4). Shore Point argues the Arbitrator was presented with one issue, and the Arbitrator's Award and remedy went far beyond the issue agreed upon by the parties. More specifically, the issue submitted to the Arbitrator was "did the Company's implementation of a new loading procedure violate the labor contract, and if so, what should the remedy be in accordance with the contract." In opposition, the Union argues that the Court should not reach Shore Point's issue because there was no final remedy or monetary award entered by the Arbitrator, and, accordingly, this action to vacate is premature and not ripe for determination under the complete arbitration rule.

## I.

      Shore Point delivers beer and other beverages to retailers throughout eight counties in central New Jersey. Its drivers and warehouse employees are represented by the Union under a labor agreement that expired on March 31, 2017 (the "CBA").

1

The procedural history of this case is straight forward: According to the Arbitrator, Shore Point

> . . . announced a new night shift loading procedure on February 10, 2016, as an incentive to increase productivity. The Union requested a meeting to discuss the new procedure, and the parties mutually agreed to meet on March 1, 2016. Meanwhile, on February 15, 2016, the Company unilaterally implemented the new procedure.

The new procedure is set forth in a memorandum dated February 10, 2016 from William Gutierrez, Jr., Shore Point's Vice President of Finance to Ron Lake, Secretary-Treasurer and Business Agent of the Union. The new procedure for the night shift is:

<u>New night loading procedure</u>

To facilitate the loading of trucks the update procedure will be as follows:

- At the start of the shift the night supervisors will divide the work into even piles based on the number of loaders available for the evening.

- The piles will contain a summary sheet that will note the number of cases, number of bbls, amount of full pallets and what are the loads are being delivered to.

- The night loaders will then be able to pick the piles based on the overall seniority of the employees.

- Once a loader has completed their assigned work they will be paid for eight regular hours even if he has been at work for less than eight hours.

- At management's discretion the employee will either be released or directed to stay and continue working if he is directed to continue working he will be immediately begin being paid at the overtime rate.

- Management will review the procedure and adjust as needed.

The Union was not in favor of the new loading procedure because the procedure benefited the night shift without providing any benefit to the day shift employees. Ron Lake testified at the arbitration hearing why he opposed the new loading procedure:

> A. Well, they brought this procedure to us and, as you know, we questioned "Well, the only people ever pick seniority was the drivers. Now, we're having the night shift picking seniority. What about the day shift?"
>
> And the company said "No, that's -- we're not interested in it. It's not going to work for us. This is it." . . . .
>
> ***
>
> We caucused for a few minutes, myself and my two stewards, and we came back and told them it was not something we were interested in and we felt that the contract prevailed and we put it back to the way it's been for the last -- as long as I've had the job. (T 67, 22 through T. 68, 13).

As a result, the Union filed a grievance because "the new procedure for night loaders is in direct violation of our CBA." See Grievance (Petition, Exhibit E). On February 16, 2016, the Union also filed a "charge against employer" with the NLRB alleging that "employer unilaterally implemented a work incentive plan . . . . and thereby violating its duty to bargain in good faith." (Petition, Exhibit F).

In response to the Union's grievance that the new procedure violated the CBA, Shore Point adamantly disagreed for two reasons. First, Shore Point argued that the new procedure was a management decision. Shore Point relies upon the management rights section of the CBA to support its contention that the new procedure was within its authority. That section of the CBA reads as follows:

3

> ARTICLE XXX -
> Management Rights
> Section 1: Subject to the provisions of this contract, the management and operation of the distributor's plant and the direction of the working force are vested exclusively in the Company.

Second, Shore Point maintained that the Union waived its right to bargain through historic action and extensive past practice.

On May 23, 2016, NLRB deferred any action by it until the grievance procedure was completed. (Petition ¶ 16).

On November 3, 2016, Arbitrator Lisa Charles ("Arbitrator") conducted the arbitration hearing, and the parties agreed on the issue to be decided. That is,

> Did the company's implementation of a new night loading procedure violate the labor contract and, if so, what shall the remedy be in accordance with the contract.

(T 9, 16-20, Arbitrator Award page 2).

As a result, on December 29, 2016, after listening to the testimony, the Arbitrator entered an Opinion and Award (Award). The Arbitrator concluded:

> In sum, the Company failed to negotiate an economic incentive with the Union, which violated the law and the contract, and failed to establish a past practice that would relieve the Company of its obligation to negotiate with the Union. The Company offered no alternative to the Union's proposed remedy if violations were found.

In the Award, the Arbitrator found Shore Point violated the CBA. The Arbitrator formulated a methodology for determining the amount of the Award, but advised that the parties should confer about same. The Award read:

> The Company's implementation of a new night loading procedure violated the Collective Bargaining Agreement. The Company is ordered to cease and desist the violations of the National Labor Relations Act and the CBA, and return to the prior loading procedure until the matter is properly negotiated with the Union. To remedy the violations, the Company is ordered to add the night shift warehouse workers' total overtime weekly earnings, divide the sum by the number of workers each week to obtain an overtime weekly average, and pay each worker the difference between what each received and the overtime weekly average, from the date of the implementation of the new night loading procedure until the date of this award, and to use the same formula for the day shift warehouse workers.
>
> The Arbitrator shall retain jurisdiction over any issues that arise in the implementation of this Award.

Once the Award was entered, the dispute resolution process fell apart. The parties could not agree on how to calculate the amount of the award. Mr. Montalbano, Esq. on behalf of the Union argued that the Award set forth a precise methodology, and either the Union or Shore Point management could calculate it. Mr. Stergios, Esq. on behalf of Shore Point, argued two different positions. First, he argued that Shore Point required another hearing before the Arbitrator in order to clarify the implementation of the Award; and secondly, Shore Point argued that the Award was final, so Shore Point had the right to bring an action to vacate the award.

At the request of Mr. Montalbano, the Arbitrator scheduled another hearing which was scheduled for March 29, 2017 to discuss the amount of the remedy. Both parties were given more than adequate notice to prepare for the hearing. Montalbano Cert., Exhibit F. On March 7, 2017, Montalbano sent a request for information to Shore Point in order to prepare for the remedy portion of the hearing (Montalbano Cert. Exhibit 1).

On March 15, 2017, Shore Point alleges it forwarded to Mr. Montalbano "two Excel spreadsheets reflecting overtime hours."

On March 24, 2017, Shore Point filed the Petition to Vacate the Arbitration Award with this Court.

On March 29, 2017, the Arbitrator convened the hearing as scheduled. Mr. Montalbano did not attend because, as I understand it, he thought it was a waste of time due to the fact that Petition to Vacate Arbitration had been filed. In light of Mr. Montalbano's failure to appear, Shore Point's attorney took the position that the Arbitrator is "functus officio, that is [she has] no further powers to do anything."

The arbitration rules established by the New Jersey State Board of Mediators provide some guidance on the finality of an award, and implementation of the "functus officio" doctrine. The Rules provide:

> 12:105-5.5 FINALITY OF AWARD
> After an award has been delivered to the parties, such award shall be final and binding upon them subject only to due process of law
>
> 12:105-5.6 ARBITRATORS STATUS SUBSEQUENT TO RENDERING A DECISION
> An arbitrator becomes functus officio upon signing his award and he may not add to, subtract from or in any way explain, correct or modify his award unless all parties, in writing, agree to reinstate his authority.

## Analysis

This case follows the analysis in *Union Switch & Signal Div. Amer. Std., v. United Elec.*, 900 F. 2d 608 (3rd. Cir. 1990). In *Union Switch*, the Third Circuit was concerned "with the proper role of federal courts . . . . where a labor arbitrator sustains a grievance, orders make whole relief, directs the parties to negotiate concerning that relief , and "retains jurisdiction" to later resolve any disputed issues regarding the remedy. *Id*. at 609. In *Union Switch*, remedial

issues were left unresolved. The company filed a petition to vacate, and the union moved to enforce the award.

In *Union Switch*, the Court found that completion of the arbitration is a prudential rule that a district court could consider, and the Third Circuit was "confident that [its] holding will not encourage district courts to entertain section 301 actions prior to an arbitration being complete in all respects." *Id*. at 614. The *Union Switch* rationale applies here. *See also*, *Gillespie v. Acme Mkts*., 2016 U.S. Dist. LEXIS 54670 (DCNJ April 25, 2016).

In this case, as in *Union Switch*, the Arbitrator retained jurisdiction over any issues that arose on the amount of the award. The Arbitrator set forth a formula for determining the remedy; but the precise calculation of the remedy concerns a number of shifts of employees over a long period of time. The exact amount awarded to each such employee could be subject to certain vagrancies. As set forth in the Award, the remedy required the parties to "add the night shift warehouse workers' total overtime weekly earnings, divide the sum by the number of workers each week to obtain an overtime weekly average, and pay each worker the difference between what each received and the overtime weekly average, from the date of the implementation of the new night loading procedure until the date of this award, and to use the same formula for the day shift warehouse workers." Even reasonable people could interpret that language differently. Until that Award is finalized, the arbitration process is incomplete.

Counsel for the Union seeks attorney's fees. The request is denied for the following reason. The Arbitrator had set up a hearing to implement the remedy portion of her Award; and then prior to the hearing, Shore Point filed a Petition to Vacate the Arbitration Award. Despite the filing of the Petition, the Arbitrator convened a hearing on the remedy, but the Union's

7

lawyer, Mr. Montalbano, deliberately failed to appear. Therefore, the failure to enter a remedy never occurred due to poor litigation strategies of both parties.

Here, the best strategy is to deny the Petition to Vacate the Arbitration Award and to remand the matter to the Arbitrator to determine the remedy as outlined in the December 29, 2016 Opinion and Award. This will prevent fragmented and piecemeal litigation. *Union Switch*, 900 F. 2d at 611.

ORDER

This matter having been opened to the Court on a motion to Vacate an Arbitration Award; and the Court having considered the submissions of the parties and having heard oral argument; and for the reasons set forth above and for good cause having been shown;

IT IS on this 14th day of November, 2017;

ORDERED that the Petition to Vacate an Arbitration Award is denied without prejudice; and it is further

ORDERED that the matter is remanded to the Arbitrator in order to finalize the remedy set forth in the Arbitrator Award dated December 29, 2016;

ORDERED that the Union's motion for legal fees is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.